Argued and submitted September 10, 1970, affirmed April 29,
petition for rehearing denied May 25, 1971

McGRATH, *Respondent and Cross-Appellant, v.*
WHITE MOTOR CORPORATION, *Appellant,*
HAUPERT TRACTOR COMPANY, *Defendant*
*and Cross-Respondent.*

484 P2d 838

*Hugh B. Collins*, Medford, argued the cause for appellant. With him on the briefs were Collins, Redden, Ferris & Velure, Medford.

*Bernard P. Kelly*, Anchorage, Alaska, argued the cause for respondent and cross-appellant. With him on the brief were Kelly & Grant, Medford.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, HOWELL and MENGLER, Justices.

DENECKE, J.

The plaintiff was injured when the frame of a

truck he had purchased and was operating broke and caused the truck to go off the road. Plaintiff brought this action for damages against the manufacturer of the truck, White Motor, the seller, Haupert Tractor, and Concrete-Steel, who made some repairs on the frame before the accident. Concrete-Steel "bought out" on a covenant not to sue. The jury returned a verdict for Haupert and against White; White appeals.

■ White demurred to Count I of plaintiff's complaint upon the ground that the count failed to state a cause of action. The demurrer was overruled. White assigns this as error. White contends the count did not state a cause of action because it did not allege the truck was defective when sold by White. The complaint alleged the truck frame was weak because it "consisted of improperly composed alloys and unable to stand the ordinary stresses and strains of log hauling."[1] This is a sufficient allegation of a defect existing at the time of sale.

■ ■ White further contends Count I is defective because it shows on its face that the cause of the frame failure was some defect which the plaintiff knew about and he continued to use the truck with the knowledge of this defect. The fallacy in defendant's reasoning is that it is not necessary to infer from the allegations of the complaint that whatever caused the first break and necessitated the repairs had any connection with the second break which injured plaintiff. Stated differently, the complaint does not allege that because of the first break and consequent repairs the plaintiff

---

[1] This allegation was stricken at the close of the evidence; however, the correctness of the trial court's ruling must be tested by the complaint at the time of the hearing on the demurrer.

was put on notice that the truck frame was defective in the area that subsequently broke and injured plaintiff. During trial the defendant made this same contention directed toward the evidence, and the evidence also does not compel a finding that the first break and repairs put the plaintiff on notice of the defect which caused the second break.

The defendant further contends that the plaintiff's complaint is defective because it alleges two or more causes of action which cannot be joined. The problem is created by Oregon's antiquated joinder statute. ORS 16.220, Joinder of causes of action, is for the most part in the same form as it was when it was adopted in 1862. The statute was taken from the New York Code of 1848 (Field's Code). The Oregon enactment did not contain a provision similar to the famous 1852 amendment to the New York Code.[2] New York Laws 1852, ch 392, § 167.

ORS 16.220 provides, in part: "(1) The plaintiff may unite several causes of action in the same complaint when they all arise out of: (a) Contract, express or implied. (b) Injuries, with or without force, to the person."

The problem is also caused by the change from the terminology of "warranty," which has contract connotations, to "strict liability," which is in tort. *Wights v. Staff Jennings*, 241 Or 301, 405 P2d 624 (1965).

Count I of plaintiff's complaint, in summary, alleged as follows: Prior to March 1964 White manu-

[2] The amendment permitted the joinder of causes of action "arising out of the same transaction or transactions connected with the same subject of action." New York Laws 1852, ch 392, § 167.

factured and assembled a White log truck. On March 7, 1964, Haupert sold the truck to plaintiff. In September 1965 the frame broke; plaintiff contracted with Haupert to repair the frame and Haupert secured Concrete-Steel to make the repairs. All these defendants "impliedly and expressly warranted" the truck to be fit for the purpose of carrying logs on mountainous terrain. The defendants breached their warranties because the truck frame broke while hauling logs on mountainous terrain causing injuries to plaintiff. The truck frame was not merchantable or fit for the purpose intended because it was composed of improper alloys unable to stand ordinary stress. Plaintiff notified defendants of these "breaches of warranty."

Count II alleged plaintiff's injuries were due to the negligence of all the defendants. Plaintiff alleged White and Haupert were negligent in using improper alloys in the frame and that Haupert and Concrete-Steel were negligent in subsequently making faulty repairs.

Defendant attacks the complaint because it alleges a cause of action in contract and a cause of action in tort. Deciding this issue requires the solution of several vexing problems.

First, we must determine whether the plaintiff has alleged more than one cause of action. What a "cause of action" is has long been a favorite philosophical, as well as practical, legal conundrum. See *Elliott v. Mosgrove*, 162 Or 507, 543-552, 91 P2d 852, 93 P2d 1070 (1939).[9] One subquestion posed here is whether the plaintiff has alleged two causes of action when he

---

[9] In the footnotes to Clark, Code Pleading (2d ed 1947), 127-148, some of the literature is cited.

has alleged two or more different theories of recovery for the same injury.

In *Hoag v. Washington-Oregon Corp.*, 75 Or 588, 144 P 574, 147 P 756 (1915), the plaintiff sued for personal injuries on the theory of both the Employer's Liability Act and common-law negligence. We held: "Beyond question the complaint states facts sufficient to justify a recovery either under the common law or under the statute, but it states only one cause of action." 75 Or at 601. We commented:

> "* * * A 'cause of action' comprehends two elements: (1) A legal right on the part of the plaintiffs; and (2) a breach of a corresponding duty on the part of the defendant to accord that right: Pomeroy's Rem., § 452; Words and Phrases, tit. 'Cause of Action.' From this definition it follows, necessarily, that all breaches of legal duty arising out of one transaction, whether flowing from common law or from the statute constitute but one cause of action, unless the statutory remedy is so inconsistent with the common-law remedy that the same judgment could not be rendered upon recovery. * * *." 75 Or at 601.

Accord, *Paget v. Cordes*, 129 Or 224, 232-236, 277 P 101 (1929); *Silver Falls Co. v. E. & W. Lbr. Co.*, 149 Or 126, 152-155, 40 P2d 703 (1935); *White v. Pacific Tel & Tel Co.*, 168 Or 371, 377-378, 123 P2d 193 (1942).

■ On the basis of these decisions we hold that a plaintiff is not attempting to state more than one cause of action when he seeks recovery for the same injury upon different theories, that is, in this case the theories of "warranty" and negligence.

■ White also contends that the plaintiff is attempting to state more than one cause of action because the plaintiff alleged that his injuries were due to

White manufacturing a defective truck, Haupert selling a defective truck, and Haupert and Concrete-Steel negligently repairing the truck 18 months after its sale. If White is correct in its contention, each cause of action must be separately stated (ORS 16.220 (2)) and they were not.

ORS 16.220 (2) also requires that separate causes of action that could otherwise be joined may not be joined unless such causes of action sought to be joined "affect all the parties to the action." This has been held to require that all joined causes of action have the same defendants. *Hayden v. Pearce*, 33 Or 89, 52 P 1049 (1898); Clark, Code Pleading (2d ed 1947), 445. If the cause of action against Haupert and Concrete-Steel for negligent repairs is separate from that against White, the cause of action against Haupert and Concrete-Steel does not affect White and, therefore, cannot be joined.

We do not decide, however, whether the complaint alleges more than one cause of action because even if it does, any error committed in failing to require a separate statement of each cause of action or not permitting the joinder of several causes of action is not reversible. The requirement of a separate statement is "designed to keep the issues clear and simple." Clark, Code Pleading (2d ed 1947), at 458. We cannot in candor state that the issues in this case were "clear and simple." We can, however, state that the existence of a cause of action for alleged negligent repairs was fully understood and a separate statement would have added nothing.

■ Likewise, if there was a misjoinder it was not prejudicial. As Judge Clark comments: "The purpose of this rule [limiting joinder] is to prevent too wide a field of litigation and too diverse issues in a single

suit, and thus to avoid a case of undue confusion and complexity." Clark, Code Pleading, supra, at 434. As we view the record in this case, the joining of several causes of action did not bring about undue confusion and complexity.

We are also constrained to hold that the violations of practice statutes in this case are not grounds for reversal because the pleading aspect as well as the entire field of products liability is in a state of uncertainty and our antiquated joinder statutes, in some instances, no longer serve any useful purpose.

ORS 16.660 provides:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

This section was invoked to support our decision that the trial court's overruling of a demurrer to a complaint which was "subject to criticism" was not reversible error. *Kaller v. Spady*, 144 Or 206, 214, 10 P2d 1119, 24 P2d 351 (1933). In *Johnson v. Homestead-Iron Dyke Mines Co.*, 98 Or 318, 326-327, 193 P 1036 (1920), the statute was cited in support of a holding that we would not reverse the trial court for denying a motion against plaintiff's complaint although "it would have been better pleading for the plaintiff to have stated his first further and separate cause with his third alleged cause in one count, * * *." 98 Or at 326.

■ White urged as a ground for its motion for directed verdict that plaintiff alleged in his pleadings, and White alleged and admitted in its pleadings, that a cause of plaintiff's injuries was the negligent repairs

made by Haupert and Concrete-Steel. These allegations, it was argued, conclusively eliminated the possibility that any act or omission by White caused plaintiff's injuries. Plaintiff in the negligence count of his complaint alleged that when Haupert and Concrete-Steel repaired the right rail of the frame they put a metal sleeve on the rail which stiffened it. They did not, however, put a metal frame on the left rail and this omission caused the majority of weight to go upon the left rail. White filed a supplemental answer alleging the identical material plaintiff alleged against Haupert and Concrete-Steel. Plaintiff filed a reply to the supplemental answer denying everything "except as * * * admitted, qualified or alleged in plaintiff's third amended complaint."

Even under our system of pleading a plaintiff is permitted to allege and attempt to prove that the act or omission of each of several defendants was a cause of plaintiff's injuries. Plaintiff's allegation that the act of one defendant was a cause of injury does not prevent allegations and proof that the act of another was also a cause. The reasons for such practice are that the plaintiff might not know which defendant was the cause of plaintiff's injury or several defendants may have been causes of plaintiff's injuries.

■ Defendant also contends that the evidence proved that the truck failed because the product wore out; that the frame had substantially changed since it left White; and that White was, therefore, not liable. There was evidence that the left rail, that is, the rail that had never been repaired or evidenced a need for repair, broke first and caused plaintiff's injury. There was evidence that the left rail broke because improper metal was used in the rail, metal that was particularly

subject to crack propagation and stress corrosion. The expert also testified that this error was exacerbated when White drilled holes in the area of maximum stress for this frame. This design, under use, broke. With such evidence the jury could have found the frame was defective when White manufactured it and such defect caused plaintiff's injury.

*Tucker v. Unit Crane & Shovel Corp.*, 256 Or 318, 473 P2d 862 (1970), was a comparable situation; a defect in manufacture which after nine years of use caused a crane boom to collapse. We affirmed a verdict for plaintiff.

Permeating many of the assignments of error regarding both the pleadings and the instructions is the question of what theories of liability plaintiff pleaded and how the jury should be instructed on these theories.

■ In Count I the plaintiff used the expression "expressly and impliedly warranted." Defendant contends this connotes a contract theory under the Uniform Commercial Code. We stated in *Wights v. Staff Jennings*, supra (241 Or at 311):

> "As we have already explained, a common law action for personal injuries resulting from a defective product based upon an implied warranty of merchantability rests upon the theory of strict liability in tort. * * *."

Similarly, in *Vaneck v. Kirby*, 253 Or 494, 450 P2d 778, 454 P2d 647 (1969), we construed a complaint alleging defendant "impliedly warranted" that the product was of merchantable quality and reasonably fit for the purpose intended to be an allegation of strict liability in tort. The complaint in this case was drafted

at a time when the concept the pleader was attempting to allege was emerging as a tort of strict liability. Admittedly, he used the term of "implied warranty," a term often associated with contract. The concept of strict liability in products liability cases is now sufficiently recognized that we suggest the problems caused by the use of "warranty" can be avoided by the use of tort terms. In this case, however, the use of "implied warranty" was not error.

We have not as yet considered whether an allegation that defendant "expressly warranted" is neces sarily an allegation of a contract theory under the Uniform Commercial Code. If the allegation only referred to an express warranty by a seller to a buyer, we would normally expect such an allegation to refer to a contract cause. Where this is not the case, however, the allegation may be an attempt to allege a cause of action in tort as stated by 2 Restatement (Second) 358, Torts § 402B. That section provides:

> "One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

> "(a) it is not made fraudulently or negligently, and

> "(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

Comment d. states, in part:

> "The theory finally adopted by most of the decisions, however, has been that of a non-contractual 'express warranty' made to the consumer in the

form of the representation to the public upon which he relies. * * *." 2 Restatement (Second), supra, at 360.

Prosser comments upon this area in *The Fall of the Citadel*, 50 Minn L Rev 791 (1966).

Neither a contractual theory nor the liability imposed by § 402 B were submitted to the jury; so we do not now have to make any decisions regarding the applicability of § 402 B. If § 402 B is the basis of a complaint we suggest that for clarity the use of "warranty" be avoided.

The trial court submitted the theory of strict liability to the jury by reading part (1) of § 402 A to the jury.[⊗] Defendant claims that even if the strict liability theory of *Wights v. Staff Jennings*, supra (241 Or 301), were properly submitted to the jury under the "implied warranty" allegation, § 402 A is not that theory, but still another theory. Defendant refers to the *Wights* theory as "strict liability for extra-hazardous things" and § 402 A as "defective condition unreasonably dangerous to the user."

In *Wights* we held "* * * the seller may be strictly liable for physical harm resulting from the sale of a product which creates an ultrahazardous condition." 241 Or at 310. We further stated: "Whether a supplier of a defective product is strictly liable for personal injuries when his conduct is not extrahazardous we need not now decide." 241 Or at 311.

In *Heaton v. Ford Motor Co.*, 248 Or 467, 470, 435 P2d 806 (1967), we expressly stated that we were

---

[⊗] The defendant did not object to this as a matter of form; however, we do not advise using sections of the Restatement as instructions to the jury. Most of the sections are written in terms not well chosen for lay understanding.

filling that void. We adopted the Restatement § 402 A and decided that a supplier of a product is strictly liable for personal injuries caused by a defective product which is unreasonably dangerous. This was reaffirmed in *Anderson v. Klix Chemical Co.*, 256 Or 199, 472 P2d 806 (1970).

■ ■ The result of this progression is that in order to apply the doctrine of strict liability in tort the plaintiff need no longer prove that the product will create an ultrahazardous condition if defective. The plaintiff only is required to prove "a lesser degree of danger, i.e., 'unreasonably dangerous' as defined in Restatement (Second) of Torts § 402A (1965) * * *." *Heaton v. Ford Motor Co.*, supra (248 Or at 470). The trial court did not err in instructing in the language of § 402 A.

The defendant has 48 assignments of error. What we have decided above disposes of most of them. The others we have considered and determined either that they are not error or that any error is not reversible and a discussion of such assignments would serve no useful purpose.

Affirmed.

McAllister and Tongue, JJ., concur in the result.