Argued February 6, affirmed April 26, 1974

BROWN ET UX, *Appellants, v.* WESTERN
FARMERS ASSOCIATION, *Respondent.*

521 P2d 537

*Thomas M. Mosgrove* of Yokom and Mosgrove, John Day, argued the cause and filed briefs for appellants.

*James C. Van Voorhees,* Prineville, argued the cause for respondent. With him on the brief were Bodie, Minturn, Van Voorhees & Larson, Prineville.

TONGUE, J.

This is an action against the manufacturer and retailer of chicken feed for damages because the feed was defective. The complaint seeks recovery on a theory of strict liability.[1] In addition to seeking damages for loss of eggs caused to taste bad, for loss of chickens caused to become valueless and which had to be replaced, and for the cost of the defective feed, the complaint seeks to recover lost profits from plaintiffs' egg business in the sum of $11,000.

The court, on motion by defendant Western Farmers Association, the manufacturer, struck the allegations of loss of profits. Plaintiffs refused to plead further and the court entered an order dismissing the case as to that defendant.[2] Plaintiffs appeal. We affirm.

---

[1] The complaint also includes a count on a theory of negligence, which is not involved on this appeal. The complaint does not, however, seek recovery on a theory of implied warranty of fitness or merchantability.

[2] Plaintiffs took a voluntary nonsuit as to the defendant Wilbur King, the retailer.

By their appeal in this case plaintiffs contend that strict liability under Section 402A of the Restatement of Torts 2d (1965), as previously adopted by this court,[9] should be extended to economic loss, including loss of profits from inability to use property damaged by a defective product. Plaintiffs recognize that this question has not yet been decided by this court and submit various cases and authorities in support of that contention.

It is contended by defendant, however, that regardless of whether recovery under Section 402A should be extended to economic loss, including loss of profits, there can be no recovery under Section 402A because, by its terms, that rule is limited to products which are not only "in a defective condition," but are also "unreasonably dangerous to the user or consumer or to his property." Defendant contends that plaintiffs' complaint does not allege an "unreasonably dangerous" defect.

Because of the importance of this question and

---

[9] Heaton v. Ford Motor Co., 248 Or 467, 470, 435 P2d 806 (1967).

Restatement of Torts 2d § 402A (1965), provides as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

because it was not raised by defendant until oral argument we called for supplemental briefs on this point.

In their supplemental brief plaintiffs state the recognized rule that when a question whether a complaint states a cause of action is raised for the first time on appeal, the complaint will be liberally construed in favor of the plaintiffs. Plaintiffs point out that the complaint, after alleging that the chicken feed was fed to the laying hens, goes on to allege:

"That the said feed so purchased was defective and such defect in the feed was such that when the feed was fed to the plaintiffs' chickens, the chickens were affected adversely and damaged thereby."

Plaintiffs contend that:

"The obvious inference from these allegations is that the feed was defective and in damaging the chicks to which it was fed it obviously was not fulfilling the reasonable expectations of the plaintiffs, because chicken feed is not expected to damage one's chickens so that their eggs taste bad and they quit laying eggs, as is also alleged in paragraph V."

Plaintiffs then quote from our decision in *Heaton v. Ford Motor Co.*, 248 Or 467, 471, 473, 435 P2d 806 (1967), in which we expressly adopted the rule as stated in Restatement of Torts 2d § 402A, and contend that:

"What this seems to be saying is that if a product does not meet the reasonable expectations of an ordinary consumer it is defective and in a condition unreasonably dangerous to the user."

Similarly, plaintiffs construe Comment *i* under Section 402A as follows:

"What this is obviously saying is that if a product has a defect and because thereof it is in a condition not reasonably contemplated by the ordinary

consumer, the product is by definition unreasonably dangerous."[2]

Based upon this reasoning, plaintiffs conclude as follows:

"We submit that under the Restatement and the Heaton case law this complaint has alleged facts, i.e. a defect and a condition not reasonably contemplated by the ultimate consumer which in effect says the product was unreasonably dangerous. That certainly is to be inferred from the language of the complaint. In construing it for the first time on appeal the plaintiffs should have the benefit of all reasonable inferences to be drawn from the facts alleged."

Defendant responds to these contentions as follows:

"A material and necessary element of strict liability under Section 402A of the Restatement of

_____

[2] Comment *i*, Restatement of Torts 2d § 402A (1965), reads as follows:

"*i. Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."

Torts 2d is that the property be 'unreasonably dangerous' to its user or consumer or to the user or consumer's property. Restatement of Torts 2d, Section 402A. HEATON v. FORD MOTOR CO., 248 Or 467, 470-471, 435 P 2d 806 (1967).

"* * * * *

"The defect in the feed is not specified. If the defect was, for example, ground glass, the court could state without any question that the feed itself because of the defect was unreasonably dangerous to the chickens. On the other hand, if the defect was too much of an ingredient, the feed itself might not be unreasonably dangerous, except in the manner in which it was fed or eaten by the chickens.

"Therefore, from the plaintiff's complaint it is not clear whether or not the plaintiff is claiming that the defective chicken feed was 'unreasonably dangerous' or merely that the feed was defective. *Both* elements are required."

In considering these opposing contentions we recognize that some authorities go even further than plaintiffs and take the position that recovery on a theory of strict liability by a consumer or user of defective goods is not dependent upon proof that such goods are "unreasonably dangerous."[⑨] This court, however, in its development of a theory of strict liability for application in cases involving defective products, has proceeded on the basis of quite different underlying assumptions.

In the first of these cases, *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965), a personal in-

[⑨] Cronin v. J.B.E. Olson Corp., 8 Cal 3d 121, 104 Cal Rptr 433, 501 P2d 1153 (1972); Anderson v. Fairchild Hiller Corp., 358 F Supp 976 (D Alas 1973); Glass v. Ford Motor Co., 123 NJ Super 599, 304 A2d 562 (1973). See also, Note: 49 Wash L Rev 231 (1973); Note: 23 Drake L Rev 197 (1973); Note: 5 Seton Hall L Rev 152 (1973); and Annot., 54 ALR3d 352 (1973).

jury case, we reviewed the authorities and quoted (at 306-309) from Prosser on Torts (3d ed 1964) 673-74, § 97; James, General Products—Should Manufacturers be Liable Without Negligence?, 24 Tenn L Rev 923 (1957); and the concurring opinion of Justice Traynor in *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal 2d 453, 150 P2d 436, 440-41 (1944). We then agreed with the proposition that the justification for the imposition of strict liability upon suppliers of defective products was the resulting hazard to human life and health and held (at 310) that strict liability should be imposed "for physical harm resulting from the sale of a product which creates an ultrahazardous condition."

On the same date, in *Price v. Gatlin*, 241 Or 315, 405 P2d 502 (1965), we affirmed the dismissal of an action to recover for economic loss resulting from the purchase of a defective tractor by a farmer, a "nonprivity" purchaser, in the absence of proof of "fault," holding (at 318) that:

> "* * * [T]he social and economic reasons which courts elsewhere have given for extending enterprise liability to the victims of physical injury are not equally persuasive in a case of a disappointed buyer of personal property. See *Seely v. White Motor Company*, 45 Cal Rptr 17, 403 P2d 145 (1965)."

Two years later, in *Heaton v. Ford Motor Co.*, *supra*, a personal injury case, we stated (at 470-71) that:

> "* * * In the case at bar, we now adopt Section 402A and hold that if the product is in fact unreasonably dangerous the manufacturer is liable for the harms caused by such a defect. It is not necessary to prove that the product is 'ultrahazardous,' nor that it was placed on the market 'neg-

ligently.' It is necessary, however, to prove that it is *dangerously defective*.

"An article is dangerously defective when it is in a condition *unreasonably dangerous to the user*. Restatement (Second) of Torts § 402A. Unreasonably, in this context, means *dangerous* to an extent beyond that which would be contemplated by the ordinary purchaser. \* \* \*" (Emphasis added)

Since our decision in *Heaton* we have consistently held that our adoption of Section 402A as the basis for an action in strict liability in tort includes its requirement that the defect be "unreasonably dangerous to the user or consumer or to his property." See *Anderson v. Klix Chemical,* 256 Or 199, 202, 472 P2d 806 (1970); *Cornelius v. Bay Motors,* 258 Or 564, 484 P2d 299, 54 ALR3d 340 (1971); *Askew v. Howard-Cooper Corp.,* 263 Or 184, 502 P2d 210 (1972); *Markle v. Mulholland's, Inc.,* 96 Adv Sh 1739, 1748, 265 Or 259, 509 P2d 529 (1973). See also *State ex rel Western Seed v. Campbell,* 250 Or 262, 267, 442 P2d 215 (1968), and separate opinion by O'CONNELL, J., at 276-77; *McGrath v. White Motors,* 258 Or 583, 596, 484 P2d 838 (1971). And see Annot., 54 ALR3d 352 (1973).

■ After reviewing our previous decisions in cases involving actions in strict liability by the purchasers of defective goods, as well as other cases and authorities on this subject,® we reaffirm our belief that when

---

® See cases and authorities cited in State ex rel Western Seed v. Campbell, 250 Or 262, 283, 442 P2d 215 (1968), and in Markle v. Mulholland's, Inc., 265 Or 259, 509 P2d 529 (1973). See also 2 Frumer and Friedman, Products Liability 3-243 n.3, § 16A[2], 3-332-334, § 16A[4] (Looseleaf); Prosser, Law of Torts (4th ed 1971) 658-62, § 99; Dickerson, Products Liability: How Good Does a Product Have to be?, 42 Ind L J 301 (1967); and P. Keeton, Product Liability and the Meaning of Defect, 5 St Mary's L J 30 (1973). See also cases and authorities cited in n.5.

an action for damages by the purchaser of defective goods is brought on a theory of strict liability, rather than fault or warranty, such an action is proper only when the defective goods are "unreasonably dangerous to the user or consumer or to his property."

■■ The complaint in this case does not, in our judgment, allege facts from which it appears, either directly or by inference, that the chicken feed involved in this case was "unreasonably dangerous," rather than merely "defective" in some manner that would not make it "unreasonably dangerous."[7] We do not agree with plaintiff's contention that "if a product has a defect and because thereof it is in a condition not reasonably contemplated by the ordinary purchaser, the product is by definition 'unreasonably dangerous.'"

Neither do we agree with the contention of the dissenting opinion by O'CONNELL, C. J., that "the only question is whether the damage caused by the feed was that which would be contemplated by the ordinary purchaser." This, according to the dissent, would include any damage that would decrease the value of plaintiffs' property.

Under that rationale, a dog food which caused a champion show dog to lose the gloss of its coat, thus decreasing its value as a show dog, would be "unreasonably dangerous" despite the fact that the health of the dog was in no way impaired. Or inferior baking powder may cause an entire batch of bread in a commercial bakery to not "rise" in the normal manner, thus impairing the saleability of the bread, although not affecting its qualities of nourishment.

[7] Cf. Texsun Feed Yards, Inc. v. Ralston Purina Company, 447 F2d 660 (5th Cir 1971).

The rule of strict liability as stated in Section 402A, at least as adopted by this court, had its genesis in cases involving products such as automobiles with defective wheels, so as to be "unreasonably dangerous" to human life. See *Heaton v. Ford Motor Co., supra.*

The only two decisions by this court in which Section 402A has been applied to property damage have been cases in which the defective product also posed an unreasonable danger to human life and safety. See *Brownell v. White Motor Corp.*, 260 Or 251, 490 P2d 184 (1971), involving damage to a truck with an allegedly defective axle which went off the road with its driver (Section 402A was not specifically mentioned) and *Wulff v. Sprouse-Reitz Co.*, 262 Or 293, 498 P2d 766 (1972), involving a defective electric blanket which caused a fire in a bedroom in plaintiff's home.

As previously pointed out, we held in *Price v. Gatlin, supra,* that the reasons for extending enterprise liability to the victims of physical injury are not equally persuasive in a case of a disappointed buyer of personal property.

As also stated by HOLMAN, J., concurring, in *Price v. Gatlin, supra* (at 319):

"* * * In establishing liability in personal injury cases courts have been motivated to overlook any necessity for privity because the hazard to life and health is usually a personal disaster of major proportions to the individual both physically and financially and something of minor importance to the manufacturer or wholesaler against which they can protect themselves by a distribution of risk through the price of the article sold. There has not been the same social necessity to motivate the recovery for strictly economic losses where the dam-

aged person's health, and therefore his basic earning capacity, has remained unimpaired. To enforce strict liability for personal injuries because of such necessity and then to allow recovery for purely economic losses because they arise from the same defect is to apply the doctrine of strict liability when the original motivating factor therefor is not present. * * *"

See also *State ex rel Western Seed v. Campbell, supra.*

We need not decide in this case whether our adoption of the rule of strict liability, as stated in Section 402A, for application in cases involving damage to property from defective products should be limited to cases in which the defective product is unreasonably dangerous to persons, as well as to property, as was true in *Brownell v. White Motor Corp., supra,* and *Wulff v. Sprouse-Reitz Co., supra.* We do not reach or decide that question in this case, notwithstanding the interpretation of our opinion by the dissent to the contrary.

We believe, however, that the term "unreasonably dangerous," as used in Section 402A as the basis for the imposition of strict liability, without proof of negligence, was not intended to be so "watered down" as to extend to any defect which in any way may decrease the value of property, as suggested by the dissent and as plaintiffs must contend in order to recover in this case.

For these reasons we hold that the trial court did not err in striking the allegations of the complaint alleging loss of profits or in dismissing the complaint upon plaintiffs' refusal to plead further. It follows that we need not decide in this case whether, in an ac-

tion on a theory of strict liability under Section 402A by the purchaser of defective goods for the recovery of damage to property, such recovery may include loss of profits or other economic loss. See Note: Economic Loss in .Products Liability Jurisprudence, 66 Colum L Rev 917 (1966).

Both the specially concurring opinion and the dissenting opinion by O'CONNELL, C. J., propose the adoption of a rule to the effect that the remedy for breach of warranty under the Uniform Commercial Code should be the sole remedy in this case, to the exclusion of any remedy under Section 402A.[9] Because we hold that no remedy is available in this case under Section 402A it may follow that the remedy provided under the UCC for breach of warranty may be the only remedy available to the plaintiff in such a case. However, the question as to whether (and, if so, the extent to which) remedies under Section 402A and under the UCC should be mutually exclusive in actions for damage to property or for economic loss was not briefed or argued by either party. Cf. *Markle v. Mulholland's, Inc.*, 96 Adv Sh 1739, 265 Or 259, 509 P2d 529 (1973). We therefore do not decide that question in this case.

For all of these reasons, we affirm the judgment of the trial court.

DENECKE, J., specially concurring.

Confusion was created in this field of law because commercial contract concepts covering claims of economic loss were shaped to impose liability for

---

[9] It should be noted that the claim in this case is not limited to "purely economic; loss of profits" as stated in the specially concurring opinion, but also includes a claim for the value of the eggs and chickens allegedly damaged by the defective feed.

personal injuries. Other contract concepts had to be ignored or overcome to impose liability. Eventually, the tort of strict liability was recognized as the basis for liability for personal injuries and the contract garb was discarded. See concurring opinion in *Redfield v. Mead, Johnson & Company*, 266 Or 273, 285, 512 P2d 776 (1973). This court and others are now striving logically to fill in the interstices of this new creation of strict liability.

In the present case the plaintiff is now attempting to reverse the field and use the new tort of strict liability to impose liability with facts which have been governed by commercial contract principles. For example, see *Kassab v. Central Soya*, 432 Pa 217, 246 A2d 848 (1968), in which plaintiff contended that defective feed lowered the value of his cows. I am of the opinion that the remedy for breach of warranty that a buyer has under the Uniform Commercial Code (UCC) is adequate and should be a buyer's sole remedy. It is unnecessary and unwise to bring the confusion of the tort of strict liability to commercial transactions.

I categorize this as a case that should be governed solely by the UCC because of two characteristics: (1) the loss claimed is purely economic, loss of profits; and (2) the loss was not an "accidental" one such as the loss in *Wulff v. Sprouse-Reitz Co., Inc.*, 262 Or 293, 498 P2d 766 (1972).

The UCC requirement of notice of breach of warranty, ORS 72.6070, or the possibility of the seller putting in a disclaimer, ORS 72.3160, are not unfair or foreign under these circumstances.

In my opinion there is a need for certainty in this field that outweighs my inability to state more

logically why recovery for personal injuries or for the kind of property damages involved in *Wulff v. Sprouse-Reitz Co., Inc.,* supra (262 Or 293), can be based upon the tort of strict liability and the economic loss claimed by plaintiff in this case can only be based upon the remedies provided for in the UCC.

O'CONNELL, C. J., dissenting.

The majority holds that the complaint does not allege facts from which it could be found that the defective chicken feed was "unreasonably dangerous" within the meaning of Section 402A of the Restatement (Second) of Torts (1965).

The complaint alleged that the defect in the feed "was such that when the feed was fed to the plaintiffs' chickens, the chickens were affected adversely and damaged thereby." As we noted in *Heaton v. Ford Motor Co.,* 248 Or 467, 435 P2d 806 (1967), the term "unreasonably dangerous" in the context of § 402A "means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser." It is clear that the section was intended to include the danger of damaging property as well as injuring the user or consumer. See Comment *d* of § 402A, Restatement (Second) of Torts. The word "dangerous" may not be the best word to describe a risk of harm to property, but it was adopted by the Restatement and I see no compelling reason for attempting to refine the language of the Section.

Since damage to property falls within the ambit of § 402A, the only question is whether the damage caused by the feed was that which would be contemplated by the ordinary purchaser. I should think that if the feed had killed the chickens, the damage would

clearly be sufficient to bring the defect within § 402A. If the damage falls short of this, but disables the chickens from properly performing the functions that give chickens their value as property, I am unable to see why § 402A would not be applicable.

The majority opinion reads plaintiffs' brief as arguing that a product is unreasonably dangerous under § 402A in every case where the product does not meet the reasonable expectations of an ordinary consumer. I do not so interpret plaintiffs' argument. Plaintiffs argue only that if a defective product *causes damage* there is a right to recover, but only if the article is found to be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it.

The majority opinion would permit recovery for property damage under § 402A only if the product were found to be unreasonably dangerous to human life. This seems to be the import of the court's statement that "[t]he only two decisions by this court in which Section 402A has been applied to property damage have been cases in which the defective product also posed an unreasonable danger to human life and safety." It is not illogical to argue that recovery under § 402A should be limited to damage for personal injuries,[①] but it is incomprehensible to me to say that a product must constitute a risk of injury to human life before recovery will be allowed for property damage, even though in the particular instance in which the property damage occurred no person suffered any harm. Apparently the court would hold that recovery would be allowed for the damage to the chickens if it

---

[①] See concurring opinion by Holman, J. in Price v. Gatlin, 241 Or 314, 318, 405 P2d 502, 503 (1965).

could be shown. that the feed contained a chemical which could, but did not, damage plaintiffs' hands. This is indeed a strange doctrine. The majority denies that it has embraced this doctrine, but a careful reading of the opinion reveals that the distinction made by the court between a product which is unreasonably dangerous and one which is not either must be regarded as resting on the reasoning I have described or as being based upon no reasons whatsoever.

The trial court struck the allegations of loss of profit, apparently upon the basis of our holding in *Price v. Gatlin,* 241 Or 314, 405 P2d 502 (1965). For the reasons set forth in my dissent in that case, I would not preclude recovery for loss of profits in the present case.

I have previously expressed the opinion that this type of case should not be dealt with under § 402A of the Restatement (Second) of Torts since it is controlled by the Uniform Commercial Code (ORS 72.7140—72.7150). See *Markle v. Mulholland's, Inc.,* 265 Or 259 at 273, 509 P2d 529 at 536 (1973), specially concurring opinion. However, the court has taken the contrary view and I am bound by it. That being so, § 402A is controlling and I would interpret it to permit recovery in the present case.

HOLMAN, J., dissenting.

I agree with that part of the dissenting opinion of the Chief Justice which holds that the feed was unreasonably dangerous to plaintiffs' property (chickens) as contemplated by Section 402A of the Restatement (Second) of Torts, and I would therefore hold that the complaint states a cause of action under that section. Unreasonably dangerous is merely the opposite of reasonably safe.

. If I were writing upon a clean slate, I would limit the application of Section 402A (contrary to its terms) to injuries to the person because it was the human carnage caused by defective products that furnished the impetus for the application of a rule of strict liability to products. See the history of products liability as outlined in *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965), and the concurring opinion of HOLMAN, J., in *Price v. Gatlin,* 241 Or 315, 318, 405 P2d 502 (1965). However, this court has twice allowed recovery for property damage in a products liability case in conformance with Section 402A. *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 498 P2d 766 (1972); *Brownell v. White Motor Corp.,* 260 Or 251, 490 P2d 184 (1971).

The results in *Price v. Gatlin* and *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1968), *cert. denied,* 393 US 1093, 89 S Ct 862, 21 L Ed 2d 784 (1969), are not to the contrary because in neither of these cases was there any damage to property caused by the defective product. There was merely the loss of anticipated business profits because the product did not perform to expectation. Section 402A is specifically limited by its terms to products "unreasonably dangerous to the user or consumer or to his property." There is nothing in either the body of the section or in the comments which follow that indicates there can be a recovery of any kind in the absence of damage to person or property.

Where there is damage to person or property and the law of damages would normally allow loss of anticipated business profits resulting therefrom, recovery for such loss should follow.