# DUNN et al, *Respondents,*
### *v.*
# DEAN VINCENT, INC., *Appellant.*
### (No. 411-432, SC 24390)

562 P2d 972

Glenn H. Prohaska, Portland, argued the cause for appellant. With him on the briefs were Michael S. Sommers and Day and Prohaska, P.C., Portland.

Howard R. Hedrick, of Hedrick, Fellows, McCarthy & Zikes, P.C., Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Tongue, Bryson, and O'Connell, Justices.

O'CONNELL, J. (Pro Tempore)

**O'CONNELL, J.,** Pro Tempore.

This is an action at law by the buyers of a tavern against the seller and his broker for common law fraud. The seller made no appearance, was found in default, and is not a party in this appeal. Plaintiffs allege that defendants represented that the tavern sold 50 kegs of beer per month and was netting an average profit of $1,000 per month, that these representations were false, and that they were made by the defendants with the knowledge that they were false or with reckless disregard for their truth. The jury returned a verdict for the plaintiffs in the sum of $9,172.77 general damages and $5,000 punitive damages. Judgment was entered on the verdict and defendant Dean Vincent, Inc., appeals.

■ Defendant contends that there was insufficient evidence to make out the elements of an action for fraud. There was such evidence.

■ Defendant next contends that the trial court erred in instructing the jury on the measure of plaintiffs' damages. We agree and therefore must reverse. The instruction was as follows:

> "If you find that Dean Vincent is guilty of fraud as I have defined it to you, the measure of damage is the money lost, if any, by the Plaintiffs; and in this case this may include, although you are not bound by it of course, although the allegations do constitute a ceiling beyond which an award cannot be made, and considering the general damage, it may consist of the operating loss of $1,327.77, the loss of $800.00 Plaintiffs paid toward equipment according to their theory, and the down payment of $7,000.00. These three figures together make up the figure of $9,172.77."

It is evident from the transcript that plaintiffs' counsel and the trial judge regarded the three dollar amounts designated in the instructions as constituting plaintiffs' net loss as a result of the purchase of the tavern, and that they fell well within the established principle that in a fraud case a successful plaintiff may recover

his "out-of-pocket" loss.[1] It was error to so regard plaintiffs' expenditures because where a purchaser *affirms* the contract (which plaintiffs did here by electing to bring a law action for fraud rather than an equity suit to rescind) he elects to retain whatever came to him under the contract, and the value of what he receives must be deducted from the amount which he paid out in computing his "out-of-pocket" loss. Where the purchaser elects to rescind he must tender back what he receives, and therefore what he pays out as purchase money or in the form of expenditures resulting in a loss are properly regarded as his "out-of-pocket" loss. Similarly, in an action at law to recover damages for a fraudulent sale, the purchaser's payment on the purchase price and other losses incident to the purchase may be regarded as "out-of-pocket" loss where the evidence establishes that the property purchased is entirely without value, leaving nothing which the purchase could credit against the loss.[2]

■ In the present case plaintiffs did not adduce evidence to prove that the interests which they received as a result of the contract of purchase were of no value. In the absence of evidence to the contrary, it is fair to assume that the unexpired term of the lease would have some value.[3] Simply because plaintiffs did not wish to continue the unsuccessful business and the property had no value to them for that purpose, it does not follow that the leasehold would not be sold to someone else for some other purpose. Plaintiffs asserted that they "left" the premises and "abandoned" it, and thus retained nothing to set off against the recited outlay made by them. We do not think that simply by these assertions the interests of the plain-

---

[1] The other measure of damages in an action for fraud is the "benefit of the bargain." See *Otte v. Ron Tonkin Chevrolet Co.,* 264 Or 265, 503 P2d 716 (1973).

[2] See *Van DeWiele v. Garbade,* 60 Or 585, 591, 120 P 752 (1912).

[3] Likewise, plaintiffs acquired certain items of personal property which in the absence of evidence to the contrary we must assume had some value.

tiffs in the property acquired under the contract (which by the present action they affirm) were revested in the seller. If they had proposed to thus divest themselves of their interest in exchange for a recovery of their outlay, they could have done so in an orderly and well recognized legal procedure by filing a suit to rescind. The judgment must therefore be reversed.[4]

Reversed and remanded.

---

[4] Defendant also assigns as error the trial court's refusal to reject evidence of another sale of a tavern through defendant Dean Vincent, Inc., to prove that defendant, in a like situation, misrepresented the success of the business. It is not necessary for us to discuss this assignment, because we can assume that on a retrial the alleged deficiency in the proof will, if possible, be supplied.