On respondent's petition for rehearing filed January 27; petition denied,
former opinion modified reversed and remanded for new trial
April 18, 1978
See 281 Or 43, 573 P2d 313 for former opinion

# GALEGO, *Plaintiff-Respondent,*
*v.*
# KNUDSEN et al, *Defendants,*
# KNUDSEN, *Defendant-Appellant.*
## (TC 74-471, SC 24602)
578 P2d 769

David Brewer, Eugene, on the petition for rehearing for respondent.

Michael J. Gentry, Portland, for defendant-appellant.

LENT, J.

**LENT, J.**

Plaintiff's petition for rehearing challenges one of the necessary propositions upon which the original opinion in this case was based; i.e., that the dwelling house referred to in the land sales contract was purchased by the plaintiff as part of the transaction in question. 281 Or 43, 49, 573 P2d 313, 317 (1978). Our premise that the dwelling house was a part of the property purchased by plaintiff was, in itself, an inference we drew from a provision in the contract:

> "Any assignment by Purchaser of this agreement, or any or all of his rights thereunder, and any lease by Purchaser of said property, or any part thereof, shall be inoperative and void, unless Vendor shall assent thereto in writing. *Except* that Purchaser shall have the right to rent the dwelling located on Lot 1, Block 80." (Emphasis added.)

This appeared to us to give plaintiff the right, without the vendor's prior consent, to rent a portion of the premises sold under the contract to a third party. We now believe that inference to be impermissible.

In a memorandum we requested in response to plaintiff's petition for rehearing, defendant,[1] to support her contention that the dwelling house was sold under the contract, drew our attention only to the quoted provision of the contract and to a part of the transcript defendant claims indicates that plaintiff and her family occupied the dwelling house "as part and parcel of the cheese factory operation." That part of the transcript does show that plaintiff and his family were receiving free "living quarters," "the house and utilities," and "housing" (as variously described in the transcript). Neither our reading of this part of the transcript nor our search of the rest of the record discloses that plaintiff and his family were in the "dwelling located on Lot 1, Block 80," as distinguished from other living quarters, which the record shows existed as a part of the cheese factory operation.

---

[1] "Defendant" refers to defendant-appellant Mildred Knudsen unless otherwise noted.

[ 157 ]

Even if plaintiff did occupy "the dwelling," however, any inference from that fact and the quoted portion of the contract must yield to the contractual description of the real property sold under the contract:

> "* * * [a metes and bounds description].

> "Being a portion of Lot 1, all of Lots 2 and 3, Block 50, and portions of Lots 2, 3 and 4, Block 80, and a portion of the vacated 'N' Street, lying between the said Blocks 50 and 80, * * *"

A "dwelling located on Lot 1, Block 80" is not within that description.[2] No one has sought reformation of the description, and defendant does not contend that the legal description embraces the dwelling.

Our reasoning, therefore, concerning a deficiency in plaintiff's evidence concerning the fair market value of the property sold was fallacious. This does not mean that the trial court judgment for the defendant upon a jury verdict is to be affirmed. It does require us to give consideration to defendant's Assignments of Error 4 through 11, which, because of our disposition of the case in the original opinion, were not addressed.

█ Defendant assigns as error (Assignment No. 4) the trial court's denial of defendant's motion to strike from the complaint Specification A, which alleged that defendant made the following misrepresentation:

> "* * * That no books or records existed showing the profit of Reedsport Cheese Factory Company, for the period February, 1971, to September, 1971."

Defendant's motion at trial and argument on appeal were based on insufficient evidence (1) that the defendant actually made the representation alleged and (2) that the representation was false.

There was, in fact, evidence from which the jury could find that defendant had made this representation. Plaintiff testified that, upon his inquiry about

---

[2]That the original opinion assumed it was resulted from a less than careful reading by the writer.

profits during the period in question, defendant replied that there were no books, as the former owners had stolen them and burned them. The question of whether there was sufficient evidence that this statement was false is more difficult. Defendant admits that some records of the cheese factory operations during this period existed but claims that these records of operation did not amount to "books or records * * * showing the profit" of the cheese factory. The fact that such records did exist is not negated by the fact that they may not have been in the form of a profit and loss statement or balance sheet. The jury was justified in finding that the records which admittedly did exist were such as would show the profit (if any) of the cheese factory during the period in question and that defendant's representation to the contrary was false.

For Assignment No. 5, defendant contends that it was error for the trial court to deny her motion to strike from the complaint Specification B, which alleged that defendant made the following misrepresentation:

"* * * That Sven Knudsen and Mildred Knudsen made $80,000 profit from the Reedsport Cheese Factory Company, for the period from February, 1971, to September, 1971."

Defendant's contention at trial and on appeal was that (1) the specification was too "vague, uncertain and unambiguous," and (2) as a matter of law, plaintiff was not entitled to rely on this representation. The first basis is without merit. Any vagueness, uncertainty or ambiguity in the allegations of a complaint should be attacked by a pretrial motion to make more definite and certain, ORS 16.110, and not by a motion at the close of plaintiff's case to strike the allegedly vague allegation.[3] The second basis amounts to an

---

[3] Defendant argued that the ambiguity lies in whether the reference to "profit" in Specification B was to net profit, the difference between income and expenses, or "gross profit," the difference between the sale price and

assertion that there was no evidence from which the jury could find that the plaintiff was justified in relying on the representation in question. The standard for determining plaintiff's right to rely on representations, admittedly made by defendant and admittedly false, is given in *Johnson et ux v. Cofer,* 204 Or 142, 149-150, 281 P2d 981 (1955):

"It is a well established principle of law that in order to secure relief on the ground of fraud, the person claiming reliance must have had a right to rely upon the representations. Generally speaking, the right to rely on representations presents the question of the duty of the party to whom the representations have been made to use diligence in respect to those representations. The courts are not entirely in accord as to the necessity of diligence at all where fraud has been employed, especially where representations are of a positive nature. The policy of the court is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest. The rule of law is one of policy. Is it better to encourage negligence in the

the cost of a product without deducting other business expenses such as salaries, office expenses, overhead and taxes. In support of her effort to have the alleged ambiguity resolved against the plaintiff, defendant cites *Hurford v. Harned,* 6 Or 362, 365 (1877), which states:

"* * * [I]t may be premised that a court of equity will never presume fraud when the transaction under their investigation is equally susceptible of two explanations, one of which is consistent with a fradulent intent, and the other with good faith and fair dealing. In such case that construction of the acts of the parties which is consistent with good faith and fair dealing will be preferred."

The application of this rule is expressly premised on the equal susceptibility of a fraudulent and nonfraudulent construction. We do not believe that the two constructions of the word "profit" were equally susceptible in this case. What we said in *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 504, 509 P2d 1199 (1973) about the ordinary meaning of "new car" is equally applicable to the ordinary meaning of "profit" in this context:

"* * * Indeed, a member of the public who purchases a car which is represented to him as a 'new car' is entitled to understand the words 'new car' by giving those words their ordinary meaning, at least in the absence of evidence that he understood and intended that term to have some other meaning."

The ordinary meaning of the word "profit" is net profit, and plaintiff testified he understood it as such. There was no testimony from the defendant that she intended gross profits when she used the term.

foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable and hampers less the administration of pure justice. The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. It has also been frequently declared that as between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing.' 23 Am Jur 948, Fraud and Deceit, § 146. See also *Larsen et al. v. Lootens et al.,* 102 Or 579, 194 P. 699, 203 P. 621."

The question, then, is whether plaintiff had the duty to investigate further. The evidence here cuts both ways. Plaintiff testified that Sven Knudsen had told him on one occasion that the cheese business was bad and there wasn't much money in it. However, defendant herself told plaintiff that her husband was a fool and a drunk and didn't know what he was talking about. In fact, Sven Knudsen at this time was seriously ill, and defendant was the sole operator of the cheese factory during this period.

Defendant next argues that her representation of profit was unworthy of belief as a matter of law in view of its comparison with the purchase price of $150,000. Plaintiff justified his reliance in spite of this disparity by citing the Knudsens' advanced age and poor physical condition and manifest desire to rid themselves of the responsibility of operating the business. Another explanation tendered by the plaintiff was the fact that his business partner was the defendant's son and as such plaintiff might reasonably expect a favorable price. In addition, it might be added that whatever duty plaintiff may have had to inquire further, defendant's representation that the records which would have provided the basis for such inquiry were nonexistent would seem to vitiate that duty. *See Horner v. Wagy,* 173 Or 441, 462, 146 P2d 92 (1944).

In *Burgess v. Charles A. Wing Agency,* 139 Or 614, 623, 11 P2d 811 (1932), we said:

"* * * Where one assumes to have knowledge of a subject of which the other is ignorant and knowingly makes false representations concerning it upon which the other relies, the party who thus induced belief will not be heard to say that the person who relied upon him was guilty of negligence. * * *"

Defendant assumed to have knowledge of what the profits of the cheese factory were during the period in question. Plaintiff was ignorant of this subject and, in addition, defendant's representation that there were no records to investigate her profit representation forestalled any independent investigation on plaintiff's part. Defendant's profit representation as found by the jury was made knowingly and was false.

■ Assignments 6, 7 and 8 relate to the sufficiency of evidence on plaintiff's theory of civil conspiracy for submission of this issue to the jury. The verdict returned by the jury did not indicate whether defendant's liability was predicated on her individual acts or upon the acts, in part or in whole, of her alleged co-conspirator. Therefore, even if we accept defendant's argument that there was insufficient evidence to submit this issue to the jury, a new trial would be necessitated. Since a new trial is required by our disposition of Assignments of Error 9, 10 and 11, we need not review the evidence here.[4]

---

[4] At the time the trial court gave the complained-of instruction to the jury on civil conspiracy, he had already determined that there was no evidence upon which the jury could hold James Frisbie liable for fraud. As we recently stated in *Bonds v. Landers,* 279 Or 169, 174, 566 P2d 513 (1977):

"* * * In general, to constitute a civil conspiracy there must be: (1) Two or more persons * * *; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. * * *"

It would appear that the first element necessary for civil conspiracy was missing, at least in the trial court's view, as a matter of law.

■ For Assignment No. 9, the defendant contends that the trial court erred in instructing the jury to "disregard" the following clause in the land sales contract:[5]

> "Purchaser [plaintiff] certifies that this contract of purchase is accepted and executed on the basis of his own examination and personal knowledge of the premises and opinion of the value thereof; that no attempt has been made to influence his judgment; that no representations as to the condition or repair of said premises have been made by Vendor or by any agent of Vendor; that no agreement or promise to alter, repair, or improve said premises has been made by Vendor or by any agent of Vendor; and that Purchaser takes said property and the improvements thereon in the condition existing at the time of this agreement."

Defendant properly excepted to this instruction. The exception amounted to a contention that the evidence represented by the recital was an admission by the plaintiff that he did not in fact rely on the representations which plaintiff claimed, and the jury found, defendant had made to plaintiff. Defendant does not urge that the clause is conclusive as a matter of law on the issue of reliance,[6] but only that it is relevant evidence which the jury should have been allowed to consider on this issue. *See Wilkinson v. Carpenter,* 276 Or 311, 314, 554 P2d 512 (1976).

---

[5]The instruction given by the trial court was as follows:

"I need to make one reference to a matter in evidence here. As you know it is the Plaintiff's contention in effect that the Defendants conspired to and fraudulently induced the Plaintiff to enter into a contract to buy the Reedsport Cheese Factory by certain specific misrepresentations. That purchase agreement, a copy of which is attached to the Complaint and one of which is in evidence, and there has been some testimony about the contents of that contract, there is a particular provision in it to which reference was made by witnesses in the trial which contains language to the effect that the sellers make no representations, the buyers rely upon their own examination and knowledge and so forth. Lawyers sometimes refer to such provisions as disclaimers. I instruct you that in making your decision you shall disregard this disclaimer. It does not operate to prevent the Plaintiff from recovering in this case if the Plaintiff proves his case under the Court's instructions."

[6]Defendant was not a party to the contract; therefore, ORS 41.350(3), which would make the truth of the facts recited in the contract conclusive between the parties is not applicable.

The only basis for excluding this evidence from jury consideration would be if the trial court, as a matter of law, properly determined that this recital was not in fact attributable to the plaintiff. This would require proof by the plaintiff that, notwithstanding his affirmance of the contract, the enforcement of this clause against him would be unconscionable or that its specific inclusion was due to duress, overreaching, undue influence or fraud. While plaintiff did offer evidence that (1) defendant was represented by an attorney who drafted the contract in question, (2) plaintiff was not represented by an attorney, and (3) plaintiff did not in fact read the contract, plaintiff also testified that defendant's attorney read parts of the contract to him, including the clause in question. Under these circumstances, the instruction directing the jury to "disregard" this evidence was error and necessitates a new trial.

■ For Assignment No. 10, the defendant contends that the trial court erred in instructing the jury as follows:

> "In general terms the person who has been the victim of a fraud is entitled to recover such damages caused thereby. Plaintiff alleges he paid $20,000 in reliance on a fraud claim and that is the damages he seeks. If you find he has proved a fraud as claimed against any one or more of the Defendants he would be entitled to recover monies paid as a result of any such fraud."

While the first sentence is a simple declaration of the law of fraud, the remainder clearly instructs the jury that an award of "monies paid" was available as damages therefor. As indicated in the original opinion, 281 Or 43, 50, such a recovery, restitutionary in nature, is not permitted in an action at law for damages caused by fraud. In such a case, plaintiff is affirming the contract. The measure of damages in the present case is limited to the difference between the purchase price and the fair market value of the property at the time of sale.

■ A recovery of the "monies paid," as such, is justified only if plaintiff affirmatively proves that the fair market value of the property covered by the land sales contract was zero. Plaintiff's own proof, that the fair market value of the property was at least $60,000, precludes this measure of recovery. *See Dunn v. Dean Vincent, Inc.,* 278 Or 117, 119-120, 562 P2d 972 (1977). The instruction was error and requires retrial.

Finally, as Assignment No. 11, defendant asserts that the trial court erred in failing to give defendant's requested jury instruction on the "presumption against fraud" as follows:

> "The law recognizes certain generalizations concerning human conduct. These generalizations are called disputable presumptions, and are to be considered by you as evidence along with other evidence in this case. In this regard I instruct you that fraud is never presumed; in fact, disputable presumptions exist that all parties are free of wrongdoing and that private transactions have been fair and honest."

■ Plaintiff acknowledges that the instruction is an accurate statement of the law but asserts that (1) the assignment was not preserved by sufficient exception at trial and (2) the error was redeemed by the trial court's instruction that the plaintiff must prove the elements of fraud by clear and convincing evidence. The first contention is answered by ORS 17.510, which requires specific exceptions to instructions *given* by the trial court but states that "all adverse rulings except those contained in instructions given shall import an exception in favor of the party against whom the ruling was made." In addition, the trial court announced to both parties that each had an "automatic exception" to any requested instruction not given. It would be patently unfair to require of the defendant a specific exception to the trial court's failure to give the instruction in question.

■ The second contention presents a more difficult problem. In the leading case of *Wiebe v. Seely, Administrator,* 215 Or 331, 359, 335 P2d 379 (1959), we

[ 165 ]

stated, "This court is committed to the doctrine that presumptions are evidence, and that in a proper case the jury should be so instructed." *See also Wyckoff v. Mutual Life Ins., Co.,* 173 Or 592, 603, 147 P2d 227 (1944); Uniform Jury Instruction (Civil) 2.02. A case is a "proper" one for jury instruction when there is sufficient evidence to justify the jury in finding the fact or facts which provide the foundation for the presumed fact *and* the negative of the presumed fact has not been established as a matter of law. The so-called presumption against fraud is based on the statutory disputable presumptions that "a person is innocent of crime or wrong," ORS 41.360(1), and that "private transactions have been fair and regular," ORS 41.360(19). *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757 (1950). The first presumption requires, as its foundation, proof only that defendant is a "person," while the second requires proof that the transaction in question was "private."

When the presumptions are applied in a fraud case, they can be overcome only by evidence, either direct or circumstantial, of a "clear, satisfactory, and convincing" nature.[7] *Id.* The trial court should not have refused to give the requested instruction unless he was justified in finding such rebutting evidence sufficient as a matter of law to overcome the presumption. Such a finding would amount to a directed verdict in favor of the plaintiff on the issue of liability. If the evidence upon re-trial does not rise to such a level, the instruction as requested should be given.

Plaintiff contends that, even if it was error for the trial court to refuse the requested instruction, the

---

[7]The writer of this opinion has previously recorded his objections to the cited quantum of proof as "of little aid to [the jury]," "downright confusing" in certain cases and "arguably contrary to the statutory law." *Byers v. Santiam Ford, Inc.,* 281 Or 411, 420, 574 P2d 1122 (1978) (concurring opinion of Lent, J.). Those views are noted here but only as the position of the writer. Disposition of that point is not necessary to disposition of this assignment of error.

The word "satisfactory" should not be used. *See Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958).

error was not prejudicial, since the import of the instruction was covered by the following instruction which was given by the trial court:

> "* * * [I]f the plaintiff fails to prove by clear and convincing evidence any one or more of the elements of fraud I have listed then your verdict would be for the defendant and this finding would end your deliberations."[8]

Again, since the case is to be retried, we need not decide whether the instruction given covered the essence of the instruction requested. It is enough to repeat here what we said previously—that the instruction requested should be given unless the trial court finds as a matter of law that the foundation fact or facts have not been sufficiently established or unless the trial court finds that the negative of the presumed fact has been established as a matter of law.

Former opinion modified. Judgment for plaintiff reversed; case remanded for a new trial.

---

[8] See footnote 7.