AGRISTOR CREDIT
CORPORATION, Plaintiff,

v.

George SCHMIDLIN and Enola
Schmidlin, Defendants and
Third Party Plaintiffs,

v.

A.O. SMITH CORPORATION, Harvestore
Products, Inc., 4–J Harvestore Systems,
Inc., and Dennis Messoline, Third Party
Defendants.

AGRISTOR LEASING, Plaintiff,

v.

Robert H. LARSON and Loretta
Larson, Defendants and Third
Party Plaintiffs,

v.

A.O. SMITH CORPORATION, Harvestore
Products, Inc., 4–J Harvestore Systems,
Inc., and Theodore (Ted) Williams,
Third Party Defendants.

Civ. Nos. 83–1847–RE, 83–1848–RE.

United States District Court,
D. Oregon.

Jan. 23, 1985.

John P. Davenport, William N. Stiles, Sylvia E. Stevens, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for plaintiffs.

Kenneth Evans, Jr., Portland, Or., for defendants and third party plaintiffs George Schmidlin, Enola Schmidlin, Robert H. Larson and Loretta Larson.

Jan K. Kitchell, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for third party defendants A.O. Smith Corporation and Harvestore Products, Inc.

E. Richard Bodyfelt, Bodyfelt, Stroup, Mount & Chamberlain, Portland, Or., for third party defendants 4–J Harvestore Systems, Inc., Dennis Messoline and Theodore Williams.

## AMENDED OPINION

REDDEN, District Judge:

These two actions have been consolidated for pretrial purposes. Plaintiff in No. 83–1847, Agristor Credit Corporation (ACC), brought this action for breach of contract and replevin. Plaintiff in No. 83–1848, Agristor Leasing (AL), is suing for breach of a lease and replevin. Plaintiffs and various third-party defendants have now moved for summary judgment.

BACKGROUND

I. *No. 83–1847*

Plaintiff ACC brought this action against defendants George and Enola Schmidlin. Defendants are dairy farmers who live in Banks, Oregon. Plaintiff contends that defendants are in default under the terms of a contract for the sale of a "Harvestore system," an automated dairy feeding system. Plaintiff has previously repossessed the Harvestore system, and now seeks damages for defendants' failure to make payments under the contract between the parties.

Defendants responded to this action by filing a counterclaim against plaintiff, as well as a third-party complaint against A.O. Smith Corporation (A.O. Smith), A.O. Smith Harvestore Products, Inc. (AOSHPI), 4–J

Harvestore Systems, Inc. (4–J) and Dennis Messoline. In their counterclaim and third-party complaint, the Schmidlins allege that what they bought from ACC was a feeding system for their cattle, and that use of the system led to a significant decline in the milk production of their dairy herd and caused many of their cattle to become sick or die. The Schmidlins assert claims against ACC and the various third-party defendants on the following theories: strict liability, deceit, breach of warranties and negligence.

## II. *No. 83–1848*

Plaintiff AL brought this action against Robert and Loretta Larson, who are also Oregon dairy farmers. Plaintiff contends that defendants are in default under the terms of two leases of Harvestore feeding systems. As in No. 83–1847, defendants have acquiesced in the repossession of the feeding systems, but have filed a counterclaim and a third-party complaint. The third-party defendants are A.O. Smith, AOSHPI, 4–J and Ted Williams. The Larsons raise the same claims that the Schmidlins raise in the other action.

## FACTS

### I. *No. 83–1847*

In June 1982, the Schmidlins purchased a dairy feeding system from West Coast Agri Systems, Inc. (West Coast) under a retail installment contract. West Coast's interest was assigned to ACC.

AOSHPI manufactured the feeding system purchased by the Schmidlins. At the time of the sale, West Coast operated an Albany, Oregon dealership, and employed defendant Messoline as a salesman. West Coast had previously purchased the dealership from 4–J. 4–J has since reacquired the dealership.

The Schmidlins began discussing the possible purchase of a Harvestore system with representatives of West Coast in February 1982. The Schmidlins signed a contract to purchase the equipment from West Coast on June 14, 1982. The agreed purchase price was 84,906.30, payable in 120 monthly installments beginning July 14, 1982. The

Schmidlins have not made payments under the contract since November 1982. ACC brought this action in December 1983.

## II. *No. 83–1848*

In March 1980, the Larsons leased a Harvestore system from AL, which system AL acquired from Columbia Harvestore Systems, Inc. (Columbia) pursuant to the Larsons' purchase order. In November 1981, the Larsons leased a second Harvestore system from AL, which system AL acquired from West Coast, pursuant to the Larsons' purchase order. Ted Williams was the salesman involved in the 1980 lease arrangements, while he was employed by Columbia. 4–J is the current operator of a dealership previously operated by Columbia and West Coast.

In March 1980, the Larsons applied to AL for credit and authorized AL to purchase a feeding system. AL accepted the credit application and the system was installed on the Larsons' farm. AL and Larsons entered into a second lease in the fall of 1981.

The Larsons made the monthly payments required under the lease agreements through September 1982. In November 1982, AL and Larsons entered into Lease Payment Deferral Agreements deferring rental payments to July 1, 1983. Defendants failed to make the payments due on that date, and have made no subsequent payments.

## DISCUSSION

### I. *The Standard*

A motion for summary judgment should be granted where (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Commission v. Murphy,* 626 F.2d 633, 640 (9th Cir.1980). All reasonable doubts as to the existence of a genuine issue of material fact should be resolved against the moving party. *Hector v. Weins,* 533 F.2d 429, 432

(9th Cir.1976). In addition, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. The Life Insurance Company of North America,* 638 F.2d 136 (9th Cir.1981).

## II. *Analysis*

As noted previously, the legal claims asserted in these cases are virtually identical. I therefore consider both cases together, except where particular issues require that they be analyzed individually.

### A. *Plaintiffs' Claims*

■ ACC seeks summary judgment on its claim for breach of contract. The Schmidlins have admitted that they executed the contract and failed to make the payments required under it. Defendants assert the validity of their counterclaims against plaintiff, but have failed to come forward with any evidence suggesting that plaintiff is not entitled to judgment on its breach of contract claim. Therefore I grant plaintiff ACC's motion for summary judgment on this claim. I will determine the amount of the judgment following the sale of the repossessed equipment.

■ AL seeks summary judgment on its claim for breach of the two leases. The Larsons admit the execution of the leases and their failure to make all of the payments required under them. They, too, have failed to show that there is a question of fact as to plaintiff's claims. I grant plaintiff AL's motion for summary judgment as to these two claims. I will determine the amount of the judgment following the sale of the repossessed equipment. I note that it is not clear whether, under the leases, plaintiff is entitled to payment of all unpaid rental installments to the end of each lease term, as prayed for.

### B. *Counterclaims and Third-Party Claims*

#### 1. *A.O. Smith*

A.O. Smith moves for summary judgment on all claims against it on the grounds of corporate immunity. It has submitted the affidavit of Joseph Michael-Kenney, a company employee, who states that AOSHPI is a wholly-owned subsidiary of A.O. Smith, but that A.O. Smith does not manufacture, promote or advertise the Harvestore equipment sold and leased here. Michael-Kenney further states that no employees of A.O. Smith were involved with the Schmidlins or Larsons prior to the time they entered into these transactions. In response, defendants assert that A.O. Smith is AOSHPI's "alter ego," and therefore is liable for its acts.

■ This is a diversity case, and I apply Oregon law. *See Stoddard v. Stoddard,* 641 F.2d 812, 813 n. 1 (9th Cir.1981). Shareholders' liability to corporate creditors is limited to the full consideration for which their shares were issued or to be issued. O.R.S. 57.131(1). This "wall of immunity" is to be respected unless (1) the parent corporation exercises actual control of the subsidiary, and (2) there is a showing of improper conduct. *Amfac Foods, Inc. v. International Systems & Controls Corporation,* 294 Or. 94, 107, 654 P.2d 1092 (1982). Thus, "the corporate entity of a subsidiary corporation should be disregarded only to prevent fraud or injustice and to protect persons whose rights have been jeopardized by the conduct of the parent corporation." *Schlecht v. Equitable Builders, Inc.,* 272 Or. 92, 96, 535 P.2d 86 (1975).

■ Defendants point to the close relationship between A.O. Smith and AOSHPI, and to at least one person who was simultaneously an officer in both companies. Defendants have pointed to no conduct by A.O. Smith sufficient to make it liable here, however. Moreover, there is no indication that AOSHPI will be unable to pay any judgment defendants may ultimately be entitled to. A.O. Smith's motions for summa-

ry judgment are granted as to all claims against it.

To the extent that defendants' counterclaims against plaintiffs rest on a similar theory, they cannot succeed. Defendants have presented no evidence of a relationship between AOSHPI and ACC or AL, or of conduct by ACC or AL, sufficient to treat them as other than separate entities.

### 2. *4–J and Williams*

■ Third-party defendant 4–J moves for summary judgment in No. 83–1847 and for partial summary judgment in No. 83–1848 on the grounds that subsequent to the first lease agreement with the Larsons, it sold certain of its assets to West Coast, making West Coast the sole Harvestore dealer in Oregon. 4–J has submitted the affidavit of its president, Robert Horneck, who states that 4–J was not involved in the sale or installation of either the equipment purchased by the Schmidlins or the equipment leased to the Larsons in 1981. Defendants have not presented any facts showing that 4–J is not entitled to summary judgment in No. 83–1847 and to partial summary judgment in No. 83–1848.

■ Ted Williams has moved for partial summary judgment in No. 83–1848 on the grounds that he was not employed by any Oregon Harvestore dealer after June 1980, and was not involved in any way in the 1981 lease of a Harvestore system to the Larsons. He has filed an affidavit to this effect. Defendants have not responded by pointing to any fact indicating Williams' connection with the 1981 lease to the Larsons. Williams' motion for partial summary judgment is therefore granted.

### 3. *Remaining Parties*
### *Claim I: Strict Liability Under § 402B of the Restatement*

■ Defendants acknowledge that a claim under § 402B of the Restatement (Second) of Torts is unavailable on the facts of these cases. ACC's, AL's and AOSHPI's motions for summary judgment are granted as to defendants' § 402B claims.

### *Claims II and III: Fraud (Misrepresentation and Concealment)*

In their second claims for relief, defendants allege that plaintiffs and third-party defendants, through salesmen Williams and Messoline and "their other agents and representatives," made certain misrepresentations of material facts, including: that the systems were oxygen-limiting; that they would prevent spoilage of silage stored in them and produce higher quality feed and a higher milk production rate; and that farm profits would increase. In their third claim for relief, defendants allege that plaintiffs and third-party defendants, again through their salesmen and other agents, concealed material facts from defendants, specifically that "[t]he Harvestore feeding system was inherently defective in that rather than limiting oxygen to the silo-like structures, oxygen was actually forced into the structure resulting in a substantial deterioration in the nutrient content of the silage contained therein." Defendants also contend this alleged defect was known to plaintiffs and third-party defendants and has resulted in numerous other claims and lawsuits around the country.

In No. 83–1847, ACC and AOSHPI seek summary judgment on these claims. In No. 83–1848, AL and AOSHPI seek summary judgment on these claims.

■ AOSHPI first urges that defendants' fraud claims are merely disguised warranty claims, and that to permit a tort action for deceit in the case of a sale of goods would frustrate the policies behind the Uniform Commercial Code. The cases cited by AOSHPI are distinguishable, however. Thus, in *Circuit Corp. of America v. Jerrold Electronics*, 426 F.Supp. 361 (E.D.Pa.1977), the Court held no more than that mere non-performance of a contract is not fraud. The Court found that the plaintiff had shown no more than noncompliance with the terms of the contract and was alleging fraud only because the statute of limitations had run on its contract claims. Similarly, in *Investors Premium Corp. v.*

*Burroughs Corp.,* 389 F.Supp. 39 (D.S.C. 1974), the Court stated that no facts had been stated in support of a fraud claim, and that plaintiff's allegations amounted to no more than claims for breach of contract and breach of warranties. Finally, in *Westfield Chemical Corp. v. Burroughs Corp.,* 21 U.C.C.Rep.Serv. 1293 (Mass.Sup.Ct. 1977), the Court's dismissal of the plaintiff's fraud claims was based in large part on the defendant's failure to misrepresent the nature of the computer being sold. Rather, the representations only involved the future performance of the computer.

Here, plaintiffs' allegations, for which they have provided some factual support, do amount to a claim that third-party defendants made certain statements about the Harvestore system that they knew to be untrue. A number of those allegations relate only to assertions about the system's future performance. Defendants have also alleged, however, that the representations about the system's oxygen-limiting feature were untrue. This is sufficient to support an action in fraud.

AOSHPI raises an additional argument, however, that is convincing. The written contract signed by George Schmidlin contains a merger clause that states in part: "I rely on no other promises or conditions and regard that as reasonable because these are acceptable to me." The agreements entered into by the Larsons contain identical language. Third-party defendants argue that defendants cannot now dispute the truth of these statements, citing O.R.S. 42.300, which provides in part:

> Except for the recital of the consideration, the truth of the facts recited from the recital in the written instrument shall not be denied by the parties thereto, their representatives or successors in interest by subsequent title.

AOSHPI asserts that there is thus a conclusive presumption that defendants relied only on the statements in the contracts they signed, which say nothing about the systems being oxygen-limiting and make none of the other alleged misrepresentations defendants point to.

■ A merger clause such as this one is valid only if it is conspicuous. *Seibel v. Layne & Bowler, Inc.,* 56 Or.App. 387, 641 P.2d 668 (1982). The merger clause here is in bold letters, and in each case defendants signed their initials directly below it. The clause is conspicuous. The clause may therefore be disregarded only if its enforcement here "would be unconscionable or . . . its specific inclusion was due to duress, overreaching, undue influence or fraud." *Galego v. Knudsen,* 282 Or. 155, 164, 578 P.2d 769 (1978). In *Galego,* the Court held that the merger clause had to be considered, although it was not conclusive because the party asserting it was not a party to the contract. As applied to these facts, though, the clause is conclusive, since defendants have made no showing that it is unconscionable or that its specific inclusion in the contract was due to any of the factors cited in *Galego.*

AOSHPI is entitled to summary judgment on claims two and three.

■ ACC and AL have each moved for summary judgment on defendants' fraud claims on the grounds that they were not involved in defendants' decisions to purchase the Harvestore systems. This assertion is borne out by defendants' deposition testimony. Plaintiffs did not employ the salesmen with whom defendants dealt, and there is no evidence suggesting that they had either express, implied or apparent authority to act on plaintiffs' behalf. Plaintiffs' are entitled to summary judgment on defendants' first two claims against them.

### Claims IV, V and VI: Breach of Warranties

Defendants' fourth, fifth and sixth claims are for breach of express warranties, as well as implied warranties of merchantability and fitness for particular purpose.

AOSHPI seeks summary judgment on these claims on the grounds that the parties contracted to limit third-party defendants' liability to the warranties and remedies provided for in the purchase agree-

ments. The relevant language is the same in each purchase agreement. On the back of each agreement, above the initials and signature of the purchaser, is the following language:

### WARRANTY OF MANUFACTURER AND SELLER

If within the time limits specified below any product sold under this purchase order, or any part thereof, shall prove to be defective in material or workmanship upon examination by the Manufacturer, the Manufacturer will supply an identical or substantially similar replacement part f.o.b. the Manufacturer's factory, or the Manufacturer, at its option, will repair or allow credit for such part. . . .

Further down the page is the following language:

### SECOND DISCLAIMER

NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE HAS BEEN OR WILL BE MADE BY OR IN BEHALF OF THE MANUFACTURER OR THE SELLER BY THE OPERATION OF LAW WITH RESPECT TO THE EQUIPMENT AND ACCESSORIES OR THEIR INSTALLATION, USE, OPERATION, REPLACEMENT OR REPAIR. NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT AND ACCESSORIES. THE MANUFACTURER MAKES NO WARRANTY WITH RESPECT TO ERECTION OR INSTALLATION OF THE EQUIPMENT, ACCESSORIES, OR RELATED EQUIPMENT BY THE HARVESTORE DEAL-

ER, WHO IS AN INDEPENDENT CONTRACTOR. IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, [sic] IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

Under Oregon law, a disclaimer of warranties is valid if it is in writing and conspicuous. O.R.S. 72.3160(2). It is for the court to decide whether the disclaimer is conspicuous. O.R.S. 71.2010(10). This disclaimer is conspicuous. It is labelled a disclaimer, it is in large, bold face print and it is entirely in capital letters.

 Such a clause will be enforced "when it is part of a bargain in fact between business concerns that have dealt with one another at arm's length in a commercial setting." *Atlas Mutual Insurance Company v. Moore Dry Kiln*, 38 Or.App. 111, 114, 589 P.2d 1134 (1979) (upholding clause limiting liability). The clause is part of the bargain in fact where it is conspicuous. *Id.* The parties here are business concerns and entered into these contracts in commercial settings. That one party in fact possessed greater financial resources does not require that the clause be voided. *See K–Lines v. Roberts Motor Co.*, 273 Or. 242, 252–53, 541 P.2d 1378 (1975). The provisions in the parties' contracts disclaiming warranties are valid and must be enforced.

Defendants argue, however, that AOSHPI is not entitled to summary judgment on these claims because the warranty that is contained in the contracts is wholly inadequate under the circumstances of these cases. O.R.S. 72.7190(2) states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code."

 Defendants did not raise this issue prior to filing its response to the motions for summary judgment, and AOSHPI argues that it should not be able to do so at

this late hour. Defendants' new contention, however, is related to their previous allegations that the equipment was defective, and I conclude that permitting defendants to amend their third-party complaint to reflect this claim will not result in undue prejudice to other parties. *See Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973).

Defendants' allegations that the Harvestore systems were defectively designed have not been controverted by any factual submissions. I do not find any Oregon cases applying O.R.S. 72.7190(2) to a factual situation such as this one. I must anticipate how an Oregon court would resolve this issue. *See Westchester Fire Insurance Company v. Sperling,* 421 F.2d 141, 142 (9th Cir.1970).

■ It is clear that the repair remedy fails where the manufacturer cannot cure substantial defects. *See S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1375 (9th Cir.1978). Defendants here argue that because the equipment was inherently defective, the repair remedy was inevitably inadequate. I conclude that if defendants can show that effective repairs were not performed, or were impossible to perform, then the exclusive remedy under the contract failed. *See Soo Line Railroad Company v. Fruehauf Corporation,* 547 F.2d 1365 (8th Cir.1977).

■ This presents the question of whether or not consequential damages would then be available, notwithstanding the contractual language barring them. The courts that have addressed this issue have reached contrary decisions. *Compare Soo Line, supra* (consequential damages available), *with American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976) (enforcing separate provision barring recovery of consequential damages). The Ninth Circuit, in a case involving California law, has enforced a limitation on consequential damages even where the repair remedy failed.

*S.M. Wilson,* 587 F.2d at 1375. The Court emphasized that its ruling was based only on the particular facts of that case. Similarly, I conclude that the availability of consequential damages should be determined in light of the relevant facts of this case. They have not yet been established. I therefore decline to rule on this issue at this time.

In conclusion, defendants' claims for breach of implied and express warranties must be rejected in light of the contractual disclaimers of such warranties. AOSHPI is entitled to summary judgment on these claims but defendants may amend their third-party complaints against AOSHPI to allege a warranty claim based on a failure of their exclusive remedy.

ACC and AL also seek summary judgment on these three claims. I consider their arguments individually.

■ ACC is the assignee of West Coast's rights under its contract with the Schmidlins. ACC contends that the Schmidlins agreed, in the contract between them and West Coast, not to assert against ACC any defenses it might have against West Coast. Such a clause is contained in the contract, and is enforceable "by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense...." O.R.S. 79.2060(1). Defendants have presented no evidence that would lead the court to reject enforcement of this provision of the contract. ACC is entitled to summary judgment on these claims.

■ AL first contends that because the Larsons entered into leases, they cannot establish the existence of any warranties arising under the Uniform Commercial Code (UCC), which applies only to the sale of goods. I find it unnecessary to analyze these leases to determine whether they are "pure" leases or ones intended to be security.[1] Whether the UCC applies or not, AL disclaimed all warranties, either express or

---

1. Such a determination would not, in any event, establish either that the transactions were sales or whether the UCC applies to them directly or

by analogy. *See All-States Leasing v. Ochs,* 42 Or.App. 319, 333–36, 600 P.2d 899 (1979).

**1316**

implied.[2] The disclaimers are conspicuous and are valid under Oregon law. *See Atlas Mutual,* 38 Or.App. at 114, 589 P.2d 1134.

▪ In addition, no claim arising out of the alleged failure of defendants' exclusive contractual remedy can be asserted against either ACC or AL. The limited remedy provided here was made only by the manufacturer, AOSHPI. If the remedy failed of its essential purpose, that does not render plaintiffs liable. *See Crume v. Ford Motor Company,* 60 Or.App. 224, 228, 653 P.2d 564 (1982).

### Claim VII: Strict Liability Under O.R.S. 30.920

Defendants' seventh claim is based on their allegations that the Harvestore systems were defectively designed. AOSHPI, ACC and AL seek summary judgment on this claim.

Movants argue that defendants cannot maintain an action brought on a strict products liability theory because they have not alleged that the Harvestore systems' conditions presented an unreasonable danger to human life. They rely on *Brown v. Western Farmers Association,* 268 Or. 470, 521 P.2d 537 (1974), for this proposition, even though the Court in *Brown* specifically declined to so hold.

O.R.S. 30.920(1) provides that:

One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm or damage to property caused by that condition.

▪ Whether a strict tort liability claim is available depends on the type of defect, not the type of injury. *See Russell*

*v. Ford Motor Company,* 281 Or. 587, 575 P.2d 1383 (1978). A defect is not "unreasonably dangerous" merely because it may in some way decrease the value of property. *Brown,* 268 Or. at 480, 521 P.2d 537. The defect alleged here, however, clearly involves a danger to property other than the product itself. The Oregon Supreme Court has not specifically ruled that a defect unreasonably dangerous to property but not to persons is a sufficient basis for strict liability, but I conclude that it would so rule if confronted with the issue. *See Russell,* 281 Or. at 594 n. 4, 575 P.2d 1383. *See also* Restatement (Second) of Torts § 402A (1965).

▪ ACC also seeks summary judgment on this claim on the grounds that it is not a seller or lessor of Harvestore systems. Under Oregon law the seller or lessor of a defective product is strictly liable only if it is "engaged in the business of selling or leasing such a product...." O.R.S. 30.920(1)(a). ACC merely financed the purchase of the Harvestore system by the Schmidlins. It has submitted the affidavit of Stan Fettig, its credit manager, who states that ACC is not in the business of selling the equipment purchased by the Schmidlins. Defendants have failed to respond with any factual materials of their own. ACC is thus entitled to summary judgment on this claim.

▪ AL also seeks summary judgment on this claim on similar grounds. AL emphasizes that it merely leased the Harvestore systems to the Larsons. Under Oregon law, however, a lessor may be subject to strict liability if it is in the business of leasing the product. O.R.S. 30.920(1)(a). AL asserts that it is not in the business of

**2.** The 1980 lease contains the following language: "Lessee acknowledges and agrees ... that lessor has not made and does not hereby make, any representation or warranty or covenant of any kind with respect to the equipment or the design, value, merchantability, fitness, condition, quality of material or workmanship or conformity of the equipment to the specifications of any purchase order relating thereto, durability or suitability of the equipment in any respect or in connection with or for the pur-

poses and uses of lessee, or any other representation or warranty or covenant of any kind or character, express or implied, with respect thereto."

The 1981 lease contains the following language: "Lessor has not made and does not make any representation or warranty, either express or implied, as to the equipment, and expressly disclaims the implied warranties of merchantability and fitness for any particular purpose."

leasing Harvestore systems. It has submitted the affidavit of Stan Fettig, who is also its director-credit manager, and also relies on *Tillman v. Vance Equipment Company,* 286 Or. 747, 596 P.2d 1299 (1979), in arguing that it must have made some representation as to the quality of the product in order to make it strictly liable to defendants here. In response, defendants argue that in 1981, before they leased the second Harvestore structure, a representative of AL came to their farm and encouraged them to lease the second structure. It is clear from Robert Larson's deposition testimony, however, that at the time of this visit the terms of the lease had already been negotiated. The only purpose of the visit was to determine whether the Larson's farming operation could support the lease payments. I conclude that there is no factual question as to whether or not AL can be considered to be in the business of leasing such equipment.[3]

In conclusion, AOSHPI's motion for summary judgment is denied as to defendants' seventh claims, and plaintiffs' motions with respect to those claims are granted.

### *Claim VIII: Negligence*

█ Defendants' eighth claims are for negligent design and manufacture of the Harvestore system. AOSHPI, ACC and AL move for summary judgment on these claims.

AOSHPI asserts that the limitations on liability contained in the contracts bar defendants' negligence claims. The relevant language in the contracts states that:

IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE [providing for repair or replacement of defective parts], IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL

OTHER REMEDIES, STATUTORY OR OTHERWISE.

A limitation on liability such as this is valid. *Atlas Mutual,* 38 Or.App. at 114–15, 589 P.2d 1134. The language is explicit and must be enforced. AOSHPI is therefore entitled to summary judgment on defendants' negligence claims.[4]

ACC and AL have both moved for summary judgment on defendants' negligence claims. Defendants' allegations are not directed against plaintiffs. Plaintiffs' motions for summary judgment are granted as to these claims.

### III. *Conclusion*

Plaintiffs' motions for summary judgment are granted as to their claims against defendants, as well as on defendants' counterclaims. Third-party defendant A.O. Smith's motions for summary judgment are granted as to all claims against it in both cases. Third-party defendant 4–J's motions for summary judgment in 83–1847 and for partial summary judgment in 83–1848 are granted. Third-party defendant Ted Williams' motion for partial summary judgment is granted.

With respect to the individual third-party claims, AOSHPI's motion for summary judgment is granted on claims I, II, III and VIII. It is also granted with respect to claims IV, V and VI of the Third-Party Complaints, except that defendants may amend their complaints to state claims against AOSHPI based on the alleged failure of their exclusive remedy under the contracts. AOSHPI's motion for summary judgment is denied as to claim VII.

---

**3.** It also appears that the limitations on liability contained in the leases would bar liability on this claim. *See K-Lines,* 273 Or. 242, 541 P.2d 1378. Although plaintiff has not raised this argument as yet, it appears that such a motion, when made, would be granted.

**4.** AOSHPI has not argued that defendants' strict products liability claims are foreclosed, although there seems to be no reason why they would not be. *See K-Lines,* 273 Or. 242, 541 P.2d 1378.